UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAGNUM GLOBAL VENTURES, INC. and
ELLIS C. REED a/k/a ELI REED,

                   Plaintiffs,

     v.

CAMERON GILES, p/k/a CAM'RON, and
JOHN DOES 1-10,

                   Defendants.

Case No.: 18 Civ. _____

**JURY TRIAL DEMANDED**

**COMPLAINT**

     Plaintiffs Magnum Global Ventures, Inc. ("MGV") and Ellis C. Reed aka "Eli Reed"

("Reed"; collectively with MGV, "Plaintiffs"), by their attorneys Cowan, DeBaets, Abrahams &

Sheppard LLP, complain and allege against defendants Cameron Giles, p/k/a Cam'ron ("Giles"),

and John Doe Defendants 1-10 ("John Does"; collectively with Giles, "Defendants") as follows:

**INTRODUCTION**

     1.    This case is about a popular celebrity's selective and self-serving respect for

Copyright Law, and his unauthorized exploitation of an iconic photograph – taken by a prolific

photojournalist who has spent his life using images to spread awareness of important issues of

public concern around the world – to peddle his latest mixtape and associated merchandise.

     2.    The celebrity in question is defendant Giles, the popular rapper professionally

known as Cam'ron, and his lack of respect for art created by others stands in surprising contrast

to the aggressive manner in which he defends his own works.

     3.    For instance, on September 26, 2005, Giles filed a federal copyright infringement

lawsuit against R&B singer R. Kelly, Zomba Recording Corp., R. Kelly Publishing, Inc., and

Zomba Songs, Inc., claiming that Kelly had taken sole credit for creating "Snake – Remix," a song they had written together.  He alleged Kelly was making money from DVD and ringtone sales without compensating him.  *See* Complaint at ¶¶ 20-21, *Giles v. Kelly et al.*, No. 05 Civ. 08284 (JES) (S.D.N.Y. Sept. 26, 2005).

4.    A month later, on October 24, 2005, Giles sued rapper Kanye West, along with Universal Music Group, Inc., and EMI Blackwood Music, Inc., for copyright infringement of a song entitled "Gone," which Giles also claimed to have co-authored.  *See* Complaint at ¶¶ 16-18, *Giles v. West et al.*, No. 05 Civ. 09068 (VM) (S.D.N.Y. Oct. 24, 2005).

5.    On January 8, 2008, Giles, though his company Diplomatic Man, Inc. ("Diplomatic Man"), filed a federal lawsuit against Nike, Inc. ("Nike"), asserting one count of copyright infringement regarding Nike's use of the song "The Second Coming."  The action was eventually dismissed, and Judge Lynch ordered Diplomatic Man to pay Nike $414,596.34 in attorneys' fees and costs.  *See Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139 (GEL), 2009 WL 935674, at *3 (S.D.N.Y. Apr. 7, 2009).

6.    In awarding Nike its attorneys' fees, Judge Lynch opined that "[p]laintiff's claim of copyright infringement was objectively unreasonable on the merits and this unreasonableness was further compounded by plaintiff's conduct throughout the proceeding.  As an initial matter, it is not even clear that plaintiff owns the copyright in 'The Second Coming.'"  *Id.*

7.    On November 25, 2016, Giles posted an Instagram video message to Dana White, the president of the Ultimate Fighting Championship, stating as follows: "you been using my song all week to promote the Conor McGregor fight at Madison Square Garden, the song 'Welcome to New York City' featuring JAY-Z, off my album 'Come Home with Me'; once again, nobody reached out to me. . . .  We'll be reaching out tomorrow, me and my lawyer."

8.      For an artist who purports to guard his copyrights as jealously and aggressively as Giles (even to the point of suing over works he may not even own), his indifference for, and cavalier attitude toward using the work of another prominent artist – Eli Reed – is startlingly hypocritical.

9.      In 1987, Reed, a prolific and award-winning professional photographer and photojournalist, took the iconic photograph entitled "Harlem street scene. Children playing in an abandoned and junked car" (the "Photograph"), which was published in his first book *Black in America*.  The Photograph was so central to Reed's career, that he featured it on the cover of his career retrospective, *Eli Reed: A Long Walk Home*.

10.      Without authorization, Giles used the Photograph as an album cover for a commercially available "mixtape" album entitled "The Program" (the "Album").  He has displayed the Photograph at the point of sale of the mixtape, plastered the Photograph all over merchandise, created videos on his social media pages featuring the Photograph, and even promoted his collaboration with Reebok using the Photograph, all without the least regard for Reed's intellectual property rights, despite Giles' self-serving and duplicitous stance on enforcement when it comes to work he himself has purportedly created.

11.      Giles believes he should be paid when someone else uses his songs without permission but sees no problem exploiting the works of others to sell his own music and merchandise.

12.      As detailed more fully below, Defendants capitalized on the Photograph without permission, credit, or compensation, and have brazenly promoted Giles' music, merchandise, and overall brand by misappropriating another artist's creative work, by encouraging others to do so, and by deleting Reed's credit to authorship of the Photograph.

## NATURE OF THE ACTION

13.     This is an action for an injunction, damages, and other appropriate relief arising out of Defendants' violations of Sections 106, 501, 1202(a), and 1202(b) of the Copyright Act, 17 U.S.C. § 101, *et seq.* (hereinafter the "Copyright Act").

14.     Defendants have engaged in willful direct and contributory infringement of the copyright in Reed's Photograph and have knowingly and willfully removal or altered copyright management information ("CMI") in connection with the Photograph, namely, Reed's authorship credit.

## JURISDICTION AND VENUE

15.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.     Upon information and belief, this Court has personal jurisdiction over Giles because Giles is an individual who has committed tortious acts within New York, as well as outside New York.

17.     Upon information and belief, Giles regularly does business and/or derives substantial revenue from goods and services used, sold, or offered for sale in New York.

18.     Upon information and belief, Giles derives substantial revenue from interstate commerce through the sale of music (both physical and digital), merchandise, concert tickets, and other promotional services such as in-person appearances.

19.     Upon information and belief, Giles should have reasonably expected that his unauthorized use of the Photograph would have consequences within New York.

20.     Upon information and belief, Giles has transacted a substantial and integral portion of his business within this District.  By way of example, on December 22, 2017, Giles

posted on Instagram that he had completely sold out a concert at New York's Irving Plaza, a venue which can accommodate over 1,000 concertgoers.

21.     Giles has also performed at many other popular New York concert venues, including, but not limited to, the Ford Amphitheater at Coney Island Boardwalk, the Highline Ballroom, and the Hammerstein Ballroom.  Upon information and belief, Giles has sold merchandise bearing the Photograph at these or other venues in New York.

22.     Perhaps in an ode to his Harlem upbringing, Giles has written many songs about New York, including "Harlem Streets" and "Welcome to New York City."  *The New York Times* has hailed Giles as "Harlem's most prominent rapper."

23.     Additionally, Giles has appeared numerous times on the VH1 television show "Love and Hip Hop: New York," which explores New York's hip hop scene.

24.     Upon information and belief, this Court has personal jurisdiction over the John Doe Defendants because they are individuals domiciled in New York City and who transact business within this District and have caused injury to Plaintiffs' interests in this District.

25.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) and 1400(a).

## **THE PARTIES**

26.     Plaintiff **Ellis Reed** is a prolific award-winning professional photographer and photojournalist widely known for his photographic documentation of foreign wars, including in Central America, Lebanon, Haiti, and Panama.  Reed has documented the Million Man March, the Lebanese civil war, conflict in Zaire, the plight of the homeless in America, and the lives of African Americans as photographed over a period of more than 40 years.

27.     Reed has written several books, including, *Beirut: City of Regrets*, *Black In America*, which included the Photograph, and his award-winning retrospective *Eli Reed: A Long Walk Home*, which featured the Photograph as its cover image.  He has exhibited his photographs around the country, in Europe, and the rest of the world.

28.     Reed has won numerous awards for his photography work including the World Press Award, Overseas Press Club Award, World Understanding Award, Lucie Foundation Award in Documentary Photography, Mark Twain Associated Press Award, Kodak World Image Award for Fine Art Photography, and the W. Eugene Smith Grant in Documentary Photography.

29.     Reed was nominated for the Pulitzer Prize for Feature Photography in 1982 by the Pulitzer Prize selection committee.

30.     Reed has lectured and taught at the International Center of Photography, Columbia University, New York University, and Harvard University.  He has resided in New York intermittently since 1984 and took the Photograph in New York.

31.     Most recently, Reed has been teaching as a Clinical Professor at the University of Texas at Austin, and his students have been named as some of the most influential young photojournalists of this generation.  These students carry on Reed's legacy of spreading awareness of happenings all around the world.

32.     Reed has worked for a number of organizations such as Save the Children, UNICEF, and many others, dating from 1979 to the present.  He has mentored amateur and professional photographers from all over the world, teaching them how to take intelligent and meaningful photographs about their areas of interest, and that help the common good.  Recently,

Reed helped a neighborhood organization in Lansing, Michigan by training a local photographer to take intelligent photographs capturing the core of the community.

33.    **Magnum Photos International, Inc.** ("Magnum"), is an international photography agency structured as a cooperative owned by its photographer members, including Reed.

34.    Founded in 1947, Magnum represents some of the world's most renowned photographers in both the art photography and photojournalism fields.

35.    Magnum is a self-selecting agency; membership in Magnum is a years-long process and is considered one of the highest accolades a photographer can receive.

36.    Reed was the first African-American member in Magnum, voted in as a nominee in 1983, associate in 1985, and as a full member in 1988.  He is the only member ever voted in directly from a staff position as a newspaper photographer.

37.    Reed was elected in 2018 to the Magnum International Foundation Board which has been a strong influence in aiding diversity and teaching emerging young photographers from all over the world.

38.    **MGV**, a subsidiary of Magnum, handles Magnum's commercial endeavors and has offices in New York and internationally.

39.    **Giles** is a rapper, actor, and entrepreneur, who was the leader or member of several hip-hop groups starting in the 1990s.

40.    Giles has released six full-length solo albums, seven EPs, 25 singles, two collaborative albums, and has self-released ten "mixtapes," including 2017's "The Program," the cover of which features the Photograph.

41.     John Does 1-10 represent the internet users who have posted content relating to Giles' Album that incorporate the Photograph.  Plaintiffs do not know the true names of the John Doe Defendants, and therefore sue these Defendants by fictitious names.  Plaintiffs will amend this Complaint to allege the true names and capacities of these John Doe Defendants when ascertained.

## FACTUAL BACKGROUND

### Ownership of the Photograph

42.     Reed took the Photograph in 1987.  Following is a true and complete copy of the Photograph, as featured on Magnum's website:



43.     Reed selected the subjects, time of day, lighting, camera, lens, focus, space, framing, contrast, and balance, and then developed a black and white print from the negative.

44.     The Photograph is highly creative, distinctive, and valuable, and it constitutes an original creative work that is subject to protection under the Copyright Act.

45.     Reed owns the copyright in and to the Photograph.  His copyright registration TX0004543968 (effective May 7, 1997) for his book *Black In America* covers the Photograph, which is included on page 142 of that book.

46.    Pursuant to a written contract with Reed, MGV is Reed's exclusive representative in connection with worldwide sale, resale, licensing, distribution, and any other forms of commercialization of Reed's photographic works (with some exceptions noted below), including with respect to the Photograph.

47.    As an exclusive licensee, MGV has standing to sue Defendants for violation of the exclusive rights Reed has granted to MGV, including without limitation, the distribution, sale, and licensing of the Photograph.  MGV is contractually authorized to represent Reed in connection with any legal claims involving infringement of Reed's copyrights in his photos.

48.    Per his contract with MGV, Reed retains copyright ownership in all his photographic works, including the Photograph.  Reed also retains the right (subject only to a non-exclusive license to MGV) pursuant to his contract with MGV to create books, films, and videos, including with respect to the Photograph.

49.    Accordingly, Reed has standing to sue for any unauthorized use of the Photograph in films and/or videos.

50.    Under the terms of Reed's contract with MGV, all licensed, authorized uses of the Photograph are accompanied by copyright management information ("CMI") that must include Reed's full name, as well as a credit to Magnum.

51.    For example, Magnum features the following CMI below the Photograph, as excerpted in paragraph 42:

Eli Reed Harlem street scene. Child playing in an unfed car. New York City, USA. 1987. © Eli Reed | Magnum Photos

52.    Reed also has standing to sue Defendants in connection with the removal or alteration of CMI, as this right is outside the scope of MGV's exclusive rights.

**Defendants' Infringing Acts**

53.     Defendants, including Giles, have copied the Photograph in full, distributed and publicly displayed the Photograph, sold copies of the Album and various articles of merchandise, and featured videos incorporating the Photograph on social media, all without authorization.

54.     Specifically, on November 10, 2017, Giles released the Album which utilized the entire Photograph as its cover art.  Giles superimposed his professional name "CAM'RON" and the album's title "The Program" on the bottom right corner of the Photograph.  Following is a true and correct screen shot of the cover art of the Album (the "Album Cover"), as featured on Giles' Instagram page on November 7, 2017:



55.     The Album Cover did not feature the CMI that accompanies all authorized uses of the Photograph.

56.     In fact, not only was the proper CMI removed and/or omitted, but it was replaced by the name "CAM'RON."

57.     Giles' Instagram post made the Photograph immediately available to Giles' nearly 1.5 million followers.

58.    The Album, featuring the Photograph on its cover, is sold through major music distribution channels, including Google Play ($9.49) and Amazon ($8.99).  Following are true and correct screen shots of the Album, featuring the Photograph on its cover, as sold through these online platforms:





59.     In addition to the sale of the Album with the Photograph as its cover art,

Defendants' uses of the Photograph on social media are commercial in nature because Giles

uses his Instagram feed for the purposes of promotion – specifically to promote his own

business interests and ventures including sales of the Album, to maintain and increase his

visibility, and to promote his persona.  The John Doe Defendants also use the Photograph on

social media for similar promotional purposes.

60.     Through investigation, Plaintiffs have also learned that Giles and several of his

associates (the John Doe Defendants) have affixed, or caused to be affixed, the Photograph to

various items of merchandise, including t-shirts, sweatshirts, and coffee mugs offered for sale

online and on-site at Giles' concerts (collectively the "Infringing Merchandise").  Following are

true and correct screen shots featuring examples of the Infringing Merchandise:

mr_camron



42,737 likes



233 likes

**sugadugga15** S/o to the good brother @lsrco showing love to the number 1 mixtape out in the streets right now and makeing the program hoodies for me and @mr_camron dipset2017

View all 11 comments

NOVEMBER 11, 2017

sugadugga15



567 likes

**sugadugga15** CEO @mr_camron , dipset2017
A&R @sugadugga15

sugadugga15



61.     The Infringing Merchandise, which prominently features the Album's cover art, does not feature the CMI that accompanies all authorized uses of the Photograph.

62.     Giles and his proxies post extensively to social media sites – including, but limited to, on Instagram, Facebook, and Twitter – advertising, displaying, offering for sale, or otherwise hawking the Infringing Merchandise.

63.     Giles, himself, and in particular, a John Doe Defendant with the Instagram username "sugadugga15," have posted repeatedly regarding the Infringing Merchandise, with sugadugga15 making such statements as "mixtape out in the streets right now and makeing [sic] the program hoodies for me and @mr_camron".[1]  Following are true and correct screen shots featuring examples of sugadugga15's Instagram posts:





---

[1] The term "@mr_camron" refers to Giles' official Instagram username.

14



64.   Both "sugadugga15" and John Does with the usernames "greatdame12" and "donjaididit" have featured the Infringing Merchandise in Instagram posts promoting Giles' collaboration with Reebok on its "DMX Run 10" sneaker (the "Giles Reebok Sneaker") which, upon information and belief, was inspired by Giles' Harlem roots.   Following are true and correct screen shots of sugadugga15's, greatdame12's, and donjaididit's Instagram posts which use the Infringing Merchandise to hawk or otherwise promote the Giles Reebok Sneaker:







65.     Even in some instances where the Infringing Merchandise is not featured in the images themselves, posts promoting the Giles Reebok Sneaker refer to the Infringing Merchandise and its availability for purchase, as shown below, in a true and correct screen shot of an Instagram post by sugadugga15:



66.     Greatdame12 whose Instagram profile states that he works for Reebok, has

uploaded numerous images of himself wearing the Infringing Merchandise:





67.    Additionally, Defendants, and even Giles himself, have posted videos on Giles'

Facebook page featuring the Album and Photograph.  Following is a true and correct screen

shot of a video posted by Giles to his Facebook page (the "Video"), which shows a still image

of the Photograph for almost a full minute while Giles' mixtape plays in the background:



68.     The Video does not feature the CMI that accompanies all authorized uses of the Photograph.

69.     On information and belief, the Video is or was being used in a commercial manner, specifically, to promote Giles' own business interests and ventures including sales of the Album, to maintain and increase his visibility, and to promote his persona.

70.     At the time that Defendants copied and distributed the Photograph, they knew or should have known that they did not have authorization or permission to do so.

71.     Defendants did not disclose their unauthorized uses of the Photograph to Plaintiffs or seek permission to use the Photograph.

72.     Or about February 26, 2018, upon learning of Defendants' various uses of the Photograph, Plaintiffs notified Giles through his attorney of his infringing conduct and attempted to resolve this matter amicably in the form of a retroactive license, but they were unsuccessful.

73.     Thereafter, Plaintiffs through counsel attempted to resolve the matter without having to go to court, but still received no productive response from counsel for Giles.  For instance, Giles, through counsel, claimed that he did not seek permission to use the Photograph because the Photograph was in black-and-white, and was presumed to be old and in the public domain.

74.     Further, Giles, through counsel, claimed that the online merchandising uses of the Photograph were not undertaken by Giles.  This is false.

75.     Giles and his representatives also claimed that Giles made no money from the use of the Photograph because the Album was offered to the public for free.  Per paragraph 58 of this Complaint, this is also false.

76.     Nonetheless, because the Photograph is registered, even if the Album was offered for free, Plaintiffs would still be entitled to statutory damages, as further discussed below.

77.     Giles further claims that he did not sell any merchandise or authorize anyone else to sell merchandise featuring the Photograph.  Not so.

78.     In numerous Instagram posts, John Doe Defendant sugadugga15 has stated that "Program tour shirts still available."  True and correct screen shots featuring examples of sugadugga15's Instagram posts showcasing the Infringing Merchandise are shown above in paragraph 63.

79.     Despite being on notice of these infringements, Giles and his cohorts continue to publicly display, distribute, and sell items bearing the Photograph; advertise, market, promote, and sell Giles' Album and his other business interests using the Photograph; and advertise, market, promote, and sell tickets to Giles' "The Program" Tour using the Photograph.

### COUNT I – COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 106 & 501)
### (Against All Defendants)

80.     Plaintiffs incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

81.     The Photograph is an original work of authorship created by Reed and constitutes copyrightable subject matter under the Copyright Act.

82.     Reed duly complied with all laws pertinent to the Photograph, registered the Photograph as part of his book *Black In America* with the U.S. Copyright Office, and is the beneficial owner of the rights in the Photograph.

83.     At all times relevant to the Complaint, MGV is and has been solely and exclusively authorized to, among other things, reproduce and distribute Reed's works, including

the Photograph, and any items containing the Photograph, in connection with any commercial use of the Photograph.

84.     At all times relevant to the Complaint, Reed is and has been solely and exclusively authorized to, among other things, create books, films, and videos utilizing his works, including with respect to the Photograph.

85.     Neither Reed nor MGV has granted to Defendants any right or license to use the Photograph in any manner whatsoever.

86.     Defendants' unauthorized reproduction, distribution, and public display of the entirety of the Photograph, including on the Internet, in social media, as the cover of the Album, emblazoned on merchandise such as t-shirts, sweatshirts, and coffee mugs, to promote the Giles Reebok Sneaker, and in the Facebook Video, all constitute infringements of Reed's exclusive rights in the copyrights in and to the Photograph, under 17 U.S.C. § 106.

87.     Defendants' infringements of the copyright in the Photograph are deliberate, willful, and in utter disregard of Plaintiffs' rights.  Giles has already been notified on several occasions that his and his cohorts' use of the Photograph constitutes copyright infringement, and yet he continues to violate Plaintiffs' rights.

88.     As a direct and proximate result of Defendants' infringements of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

89.     Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000, or such other amounts as may be proper under 17 U.S.C. § 504(c).

90.     Plaintiffs further are entitled to their attorney's fees and full costs pursuant to 17

U.S.C. § 505.

91.     Defendants' conduct is causing, and, unless enjoined and restrained by this Court,

will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or

measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502,

Plaintiffs are entitled to injunctive relief prohibiting further infringements of Plaintiffs'

copyright.

### COUNT II – VICARIOUS AND/OR CONTRUBUTORY COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 105 & 501)
### (Against Giles)

92.     Plaintiffs incorporate by reference the allegations in each of the preceding

paragraphs as if fully set forth herein.

93.     As set forth above, a tremendous amount of direct copyright infringement by

various internet users (sued herein as John Doe Defendants) has taken place because of Giles'

conduct.

94.     Reed's copyrights in the Photograph are directly infringed each time an internet

user without authorization uploads, displays, or distributes the Album Cover, or sells or offers

for sale items featuring the Album Cover, which was originally disseminated by Giles and his

proxies.

95.     By providing access to the Album Cover, and thereby providing the facilities

necessary for internet users to commit copyright infringement, Giles has and continues to

knowingly materially contribute to the unauthorized reproductions and distributions of the

Album Cover and its infringing use the Photograph.

96.     Indeed, in addition to the John Doe Defendants mentioned above who post images of the Album Cover and sell Infringing Merchandise, many internet other users have also uploaded the Album Cover, which violates Plaintiffs' exclusive rights to display and reproduce the Photograph.  To name just a few, Instagram users "730work," "izit42st," "camerongilbert7651," and "pushnthelimits" have all uploaded the infringing Album Cover to their Instagram pages.

97.     On at least one occasion, an internet user identified at "Jon Powell," without Reed's authority or knowledge, posted the Album Cover with a legend appearing beneath the Photograph: "Image credit: Cam'ron."  Following is a true and correct screen shot of this post:





Image credit: Cam'ron

98.     The dissemination of the infringing image above would not have occurred but for Giles' unauthorized use of Plaintiffs' Photograph.  Giles has provided these third parties with copies of the Photograph for their infringing uses, and on information and belief, has actively and knowingly induced, encouraged, and materially contributed to these direct infringements.

99.     Through Plaintiffs' counsel, Giles has repeatedly been provided with actual knowledge of the direct infringements occurring on the various sites through which he promotes his Album, merchandise, tour, and the Giles Reebok Sneaker, including, but not limited to, his Facebook page, his Instagram page, his Twitter page, and on Google Play and Amazon.

100.    Upon information and belief, Giles has refused to remove the infringing content or to otherwise act effectively in response to such notice.

101.    Giles has not acted reasonably or in good faith in response to Plaintiffs' notices of infringement and repeat infringement.

102.    On information and belief, Giles has the right and ability to control the John Doe Defendants in connection with their misuse of the Photograph, in that Giles dictates the sites on which his Album is sold, and the creators, suppliers, distributors, and sellers of his merchandise.

103.    For the reasons stated above, Giles reaps monetary gains from the infringements by the John Doe Defendants and other third parties and therefore has a direct financial interest in the infringing activities.

104.    Giles' acts of secondary copyright infringement have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

105.    As a direct and proximate result of Giles' infringements of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

106.   Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000, or such other amounts as may be proper under 17 U.S.C. § 504(c).

107.   Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

108.   Defendants' conduct is causing, and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to injunctive relief prohibiting further contributory infringements of Plaintiffs' copyright.

**COUNT III – VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT**
**Provision and Distribution of False Copyright Management Information**
**(17 U.S.C. § 1202(a))**
**(Against John Doe Defendants)**
**Removal or Alteration of Copyright Management Information**
**(17 U.S.C. § 1202(b)(1) & (2))**
**(Against All Defendants)**

109.   Plaintiffs incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

110.   Under the terms of Reed's contract with MGV, all licensed, authorized uses of the Photograph are required to be accompanied by CMI that includes Reed's full name, as well as a credit to Magnum.

111.   Upon information and belief, Defendants, or someone working on their behalf, removed the CMI from the Photograph without authorization of Plaintiffs or the law and then distributed the Photograph, with the CMI removed, without the authorization of Plaintiffs or the law.

112. Defendants, including Giles, have also distributed, sold, and offered for sale the Infringing Merchandise, which features the Album Cover with the required CMI omitted.

113. On information and belief, Defendants' removal of the CMI from the Photograph was intentional, and Defendants' distribution of the Photograph was with knowledge that the CMI had been removed without authorization.

114. This conduct violates 17 U.S.C. § 1202(b) of the Digital Millennium Copyright Act ("DMCA"), which prohibits the intentional removal of CMI or the distribution of copyrighted works with altered or removed CMI.

115. Upon information and belief, the alteration and/or removal of said CMI was made by Defendants intentionally, knowingly and with the intent to induce, enable, facilitate, or conceal its infringement of Reed's copyrights in the Photograph.

116. Defendants were clearly using someone else's copyrighted work without permission for commercial and promotional purposes, and Giles intended for others to continue disseminating the Album Cover and merchandise bearing the Album Cover far and wide to increase sales and professional exposure. To include a credit line on the Photograph would have been to draw attention the fact that the Photograph belonged to someone else, and removing it allowed Giles and his cohorts to continue their infringing business practices with their heads buried in the sand.

117. For the same reasons, Defendants also knew, or should have known, that such alteration and/or removal of said copyright management information would induce, enable, facilitate, or conceal their infringement of Reed's copyright in the Photograph.

118. At least one John Doe Defendant (tentatively identified herein as Jon Powell) has also violated 17 U.S.C. § 1202(a)(1) and (2) by attributing the authorship of the Photograph to

Giles as opposed to Reed. The CMI provided by Powell is false because Giles is not, in fact, the author or owner of the Photograph, and does not otherwise deserve credit for the Photograph.

119.   Provision of the aforementioned false CMI was undertaken with the intent to induce, enable, facilitate, or conceal infringement for the reasons stated above.

120.   Reed has suffered injury as a result of Defendants' violation of 17 U.S.C. § 1202(a) and (b), and as the owner of the copyright in the Photograph, Reed is entitled to bring a civil action against Defendants under 17 U.S.C. § 1203(a).

121.   Under 17 U.S.C. § 1203(c), Reed is entitled to actual damages and profits attributable to the violation or statutory damages in an amount no less than $2,500 and no more than $25,000, for their violations of the DMCA.

122.   Under 17 U.S.C. § 1203(b), Reed is further entitled to attorney's fees and costs as a result of Defendants' violation of the DMCA.

123.   Defendants' acts have caused, and will continue to cause, irreparable injury to Reed.  Reed has no adequate remedy at law and is thus entitled to an injunction under 17 U.S.C. § 1203(b), along with damages as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully demand:

A.   That the Court find that Defendants directly infringed – or contributed to the infringement of – Plaintiffs' copyright in the Photograph in violation of 17 U.S.C. §§ 106 and 501; that Defendants provided and distributed false CMI in violation of 17 U.S.C. § 1202(a); and that Defendants removed or altered CMI in violation of 17 U.S.C. § 1202(b);

B.   That the Court issue an injunction providing that, pursuant to 17 U.S.C. § 502, Defendants, their agents, owners, partners, officers, directors, agents, servants, employees,

representatives, licensees, subsidiaries, manufacturers and distributors, and/or anyone acting on behalf of, or in concert with, Defendants, jointly and severally, be enjoined throughout the world during the pendency of this action and permanently thereafter from:

   i.   manufacturing, reproducing, selling, offering for sale, promoting, advertising, distributing, and/or commercially exploiting in any manner, either directly or indirectly, any materials, including music CDs, downloads, videos, t-shirts, sweatshirts, coffee mugs, and other items, which incorporate the Photograph;

   ii.  posting, distributing, displaying, e-mailing, or otherwise disseminating, in physical or digital format, in any physical location, or on any website, social media platform, or any other location on the Internet, any copy of the Photograph, including as part of the album cover of "The Program"; and

   iii. holding themselves out as licensees or otherwise authorized users of Plaintiffs' Photograph;

   C.   An order requiring an accounting, and that all gains, profits and advantages derived by Defendants by their acts of infringements be deemed held in constructive trust for the benefit of Plaintiffs;

   D.   That, pursuant to 17 U.S.C. § 503, Defendants be required to deliver to the Court, or to some other person that the Court may designate, for ultimate destruction, any and all articles of merchandise, including music CDs, t-shirts, sweatshirts, coffee mugs, and/or other materials in Defendants' possession or control which might, if sold or distributed for sale, violate the injunction granted herein;

E.      For Defendants' acts of copyright infringement, that Plaintiffs be entitled to recover all actual damages and all profits derived from the unauthorized use of Plaintiffs' Photograph or, where applicable and at Plaintiffs' election, maximum statutory damages for Defendants' willful conduct;

F.      Under 17 U.S.C. § 1203, actual damages for the unauthorized alteration or removal of copyright information or, where applicable and at Plaintiffs' election, statutory damages of not less than $2,500 or more than $25,000;

G.      Reasonable attorney fees;

H.      Court costs, expert witness fees, and all other costs authorized under law;

I.      Pre-judgment interest; and

J.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable in this action.

Dated: New York, New York
       October 2, 2018

By: _____
       Nancy E. Wolff
       Scott J. Sholder
       Lindsay R. Edelstein
       COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP
       41 Madison Avenue, 38th Floor
       New York, New York 10010
       Telephone: (212) 974-7474
       Facsimile: (212) 974-8474
       Email: NWolff@cdas.com
               SSholder@cdas.com
               LEdelstein@cdas.com

*Attorneys for Plaintiffs Magnum Global Ventures, Inc. and Eli Reed*